In the Matter of BERMAN & CO., Inc., d/b/a National Credit Clothing Co., Bankrupt.

Sheldon D. BERMAN and J. Eugene Farber, Appellants,

v.

NATIONAL FINANCE COMPANY, Appellee.

No. 17175.

United States Court of Appeals
Sixth Circuit.

June 6, 1967.

———◆———

J. Eugene Farber, Toledo, Ohio, for appellants, Farber, Cochrane, Green & Shibley, Toledo, Ohio, on the brief.

Edward L. Kevern, Toledo, Ohio, for appellee.

Before O'SULLIVAN, Circuit Judge, and WILBUR K. MILLER * and CECIL, Senior Circuit Judges.

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

WILBUR K. MILLER, Senior Circuit Judge.

Berman & Co., Inc. was adjudicated a bankrupt in August, 1961, in the United States District Court for the Northern District of Ohio, Western Division. On January 25, 1962, the appellant, Sheldon D. Berman, filed a proof of claim as a creditor of the bankrupt in the amount of $18,588.11.

On August 11, 1965, the National Finance Company filed with the referee a written request "for permission to attach the dividend herein declared payable to Sheldon D. Berman." The request stated the attachment would be issued from the Common Pleas Court of Lucas County, Ohio. On the same day—August 11, 1965—the referee entered the following order:

"Upon application of National Finance Company, it is hereby ordered that National Finance Company is granted permission to attach the dividend herein declared payable to Sheldon D. Berman: Said attachment to be issued from the Common Pleas Court of Lucas County, Ohio."

It will be noted, however, that, when this permission to attach Berman's dividend was granted, his claim had not been allowed and no dividend had been declared. It was not until August 19 that Berman's claim was allowed, and it was not until August 20 that a dividend of $9,227.10 was declared thereon and ordered paid.

The record does not show when the National Finance Company filed suit against Berman in the Common Pleas Court, nor when an attachment was issued and served on the trustee in bankruptcy. The writ was served and honored, however, because the trustee did not deliver Berman's dividend check to him.

Appellant's motion to vacate the order of August 11, filed September 7, 1965, was heard by the referee September 22 and denied by him September 28. A pe-

tition for review of the orders of the referee was filed October 4, 1965, and the referee's certificate to the District Court with respect thereto was filed January 6, 1966. In the latter document an interesting fact was mentioned for the first time: that either the referee or the trustee had caused Berman's dividend check to be certified by the bank upon which it was drawn. The referee's certificate contained the following:

> "The records and proceedings in this case show that the trustee has distributed all the money he was holding and has none in his bank account. His final account has been approved and his surety bond discharged leaving in effect a small personal bond which he had on file before he was able to realize any money in the estate. The check to Mr. Berman in the amount of his dividend was certified by The Toledo Trust Company, the bank in which the trustee had on deposit the moneys of the bankrupt estate. The effect of this is that the funds for the payment of the check to Mr. Berman have been set apart by the bank for Mr. Berman and are not subject to any action by the trustee. Blake v. Hamilton Dime Savings Bank, 79 Ohio St. 189, 87 N.E. 73, 20 L.R.A.,N.S., 290. There is, therefore, no necessity to have a surety bond for the trustee and as soon as the Common Pleas Court of Lucas County issues its order to the trustee to turn over to it the certified check belonging to Sheldon D. Berman there is no reason why the bankrupt estate may not be closed. * * *"

The petition for review was denied by the District Court February 11, 1966, by an order which approved and adopted the findings and conclusions of the referee set forth in his certificate. This appeal by Berman and J. Eugene Farber, his counsel and attorney in fact, ensued.[1]

The initial question is whether a referee in bankruptcy has power to permit a creditor's dividend to be attached in a state court action by one who claims to be a creditor of the bankrupt's creditor. Even if it be assumed that a referee has such authority, it is doubtful whether permission to attach could properly be granted when, as here, the dividend sought to be attached has not been declared and the claim of the bankrupt's creditor has not even been allowed.

But, whether so or not, we are clearly of the opinion that a referee in bankruptcy is not authorized or empowered to permit a dividend in the hands of his trustee to be attached by process from a state court. This has long been the rule established by federal appellate courts. For example, in the case of In re Argonaut Shoe Co., 187 F. 784, decided by the Ninth Circuit in 1911, the court cited with approval the following quotation from Gilbert v. Quimby, 1 F. 111, 113 (C.C., S.D. New York 1880):

> "That the dividend was not attachable on process from the state courts would seem to be quite clear. While in the hands of the assignee it would be a part of the estate of the bankrupt in the custody of the court. It would not be held the property of the debtor, but would only be property that would become his when he should get it. He could not maintain any suit against the assignee for it, nor obtain it by any legal process other than by application to the district court having control of the fund as a party to the proceedings in that court. Money in the hands of a disbursing officer of the United States, due to a private person, cannot be attached on process against such person out of a state court, because the money will not be his, but will remain the property of the United States until it is paid to him. Buchanan v. Alexander, 4 How. 20 [11 L.Ed. 857]. * * *"

The *Argonaut* court then quoted from another case, In re Cunningham, 6 Fed.

---

1. Farber is an appellant in his individual capacity because he represented Berman in establishing his claim against the bankrupt estate pursuant to a contract for a contingent fee, and claims an attorney's lien upon Berman's dividend.

**254**

Cas. 958, 959 (No. 3,478) (D.C.D.Iowa 1879):

" * * * The reason of this doctrine seems to be that the court, having the money or property in its custody under the law, holds it for some purpose, of which that court is exclusive judge. To permit property or money thus held to be seized on execution, attached, or garnished, would, therefore, defeat the very purpose for which it is held, and, in many cases, enable some other court to dispose of property or money, and wholly divert it from the end or purpose for which possession has been taken. A conflict of jurisdiction and decision would, in many cases, thus ensue. * * * "

The Ninth Circuit flatly said, "[T]he right to garnishee funds in custodia legis must depend upon express statutory authority. No such authority is to be found in the bankruptcy law."

The case of In re American Electric Telephone Co., 211 F. 88, decided by the Seventh Circuit in 1914, is to the same effect. The court said:

" * * * The main question here presented is whether or not it was error for the District Court to permit the introduction into this bankruptcy proceeding of an independent and entirely irrelevant matter. For respondent it is claimed that by analogy the law and practice relative to permitting suits against receivers is applicable to trustees in bankruptcy. If this be so, then the District Court had the power, in its legal discretion, to permit the garnishment of the trustee. Undoubtedly, the bankruptcy court has power to permit suit against its trustee or receiver with reference to liens upon or title to specific property claimed by the trustee. This, however, is not such a case. Here the respondent sought to create a lien. The effect is to inject into the bankruptcy proceedings a suit to enforce payment of a claim against a creditor of the bankrupt, a matter in which the trustee was not concerned and one neither covered nor contemplated by the bankruptcy act. * * *

"It is apparent that any attempt to adjust the rights of a creditor of the bankrupt as against the rights of one seeking to enforce a claim against the creditor's dividend must, when carried out to its logical result, place an additional burden upon the bankruptcy court and work a delay in the settlement of the estate. It is conceivable that garnishment proceedings may be prolonged for years, so that the court may be congested with unfinished business which in no way concerns the bankruptcy cases so remaining undisposed of, thus becoming an independent collection tribunal * * * ."

The court then discussed certain prior federal cases, including the *Cunningham* case in 1879. It also referred to the *Argonaut Shoe* case and quoted from it that "the right to garnishee funds in custodia legis must depend upon express statutory authority" and that "[t]he distribution of the assets of the bankrupt, therefore, cannot be stayed or prevented by the process of a state court, the object of which is to withhold a dividend from a creditor entitled thereto for the security of a plaintiff pending litigation."

The Eighth Circuit, in Glass v. Woodman, 223 F. 621 (1915), held the District Court did not err in declining to authorize a garnishment of a special master to make foundation for an action in a state court. Said the court, at page 623:

" * * * The custody of the special master was the custody of the law. The property of a litigant so held is not subject to attachment or garnishment from another jurisdiction. In re Argonaut Shoe Co., 187 F. 784, 109 C.C.A. 632. The doctrine is old, and its reasons rest in considerations of orderly judicial procedure. * * * "

We do not find that any federal appellate court has ever departed from the rulings of the Ninth, Seventh and Eighth Circuits in the three cases just discussed, except Bankers' Mortg. Co. of Topeka, Kan. v. McComb, 60 F.2d 218, decided by the Tenth Circuit in 1932, to which we shall refer later. The appellee's princi-

pal reliance is upon a district court case, In re Chakos, 36 F.2d 776, decided by the District Court for the Western District of Wisconsin in 1930. The *Chakos* opinion purports to follow the *Argonaut Shoe* and *American Electric Telephone* cases, and cites them in support of the following statement:

> "It is the established rule in the federal court [*sic*] that funds in custodia legis are not as matter of right subject to either attachment or garnishment. * * * *"

The flaw in the *Chakos* reasoning lies in the fact that the statement just quoted is not the rule set forth in the cases cited. Those cases did not restrict "the established rule" to the statement that funds in custodia legis are not *as a matter of right* subject to either attachment or garnishment. They unequivocally held that funds in the hands of a trustee in bankruptcy are not subject to attachment by process from a state court; that such a right could arise only from express statutory authority, and that the bankruptcy court may not permit such attachment.

By mistakenly limiting the established rule to a statement that funds in custodia legis are not, *as a matter of right*, subject to attachment, the District Judge who wrote *In re Chakos* left himself room to add to it his holding that a referee may *permit* the attachment of a dividend in the hands of a trustee in bankruptcy. In our view, this was an incorrect holding, which violated the established rule.

The *Bankers' Mortgage* case, to which we referred earlier in this opinion, states, 60 F.2d at page 221:

> " * * * It is a general rule that, where a person's possession or control of property constitutes custodia legis, he cannot be subjected to garnishment process in respect of such property. * * *
>
> "The reason for the rule is that to require such a person to respond in garnishment would result in an interruption of the orderly progress of judicial proceedings and in an invasion of the jurisdiction of the court which has legal custody of such property. [Citing Glass v. Woodman, In re Argonaut Shoe Co., and several state decisions.]"

Having thus avoided the *Chakos* erroneous statement of the established rule, the Tenth Circuit nevertheless followed the *Chakos* lead and concluded that, in the circumstances, it was within the discretion of the trial judge [2] to permit the garnishment at issue in that case. *In re Chakos* is the only federal authority cited by the Tenth Circuit to support its conclusion.

As we have seen, the Ninth and Seventh Circuits have unqualifiedly held that a dividend in the hands of a trustee in bankruptcy may not be reached by an attachment from a state court; that the right to garnishee such funds can arise only from express statutory authority which is not found in the bankruptcy laws; and that (as heretofore quoted) "the distribution of the assets of the bankrupt, therefore, cannot be stayed or prevented by the process of a state court, the object of which is to withhold a dividend from a creditor entitled thereto for the security of a plaintiff pending litigation." We agree with this long-established rule, and regard as unsound the attempt of *Chakos* to alter it by permitting a dividend in the hands of a trustee in bankruptcy to be reached by a state court attachment if the referee thinks the bankruptcy proceeding will not be delayed or interfered with by the attachment.

This case is an example of the delay which may occur if the *Chakos* holding is applied. Here, the referee permitted the attachment because he thought his proceeding would not be delayed by it. He tried, through the subterfuge of having Berman's dividend check certified, to avoid delay in closing the bankruptcy proceeding; but he was not successful.

2. Bankers' Mortg. Co. v. McComb is not a bankruptcy case.

Now, nearly two years after the attachment, the referee still has possession of the certified dividend check, the trustee is still under bond, and the bankruptcy case has not been terminated. It could have been closed in the fall of 1965, had the referee not permitted the dividend to be attached.

For the reasons given, we conclude that the District Court erred in approving the referee's action in permitting Berman's dividend check to be attached by the state court process. Its judgment is reversed, with instructions to direct the referee to deliver the certified check to Berman.

So ordered.