**In the Matter of The RUBICON, LTD.,**
**Debtor.**

**No. B–70 4428.**

United States District Court,
N. D. California.

Aug. 24, 1971.

Irving J. Kornfield, Oakland, Cal., Trustee.

Robert C. Burnstein, Oakland, Cal., for applicant.

IN PROCEEDINGS FOR AN AR-
RANGEMENT UNDER CHAPTER
XII OF THE BANKRUPTCY ACT.

CONTI, District Judge.

This action is before the court on the petition of Samson Construction Company, Inc. for review of the Referee's order of April 2, 1971. The facts of the case are essentially as follows.

The Rubicon, Ltd., debtor herein, was engaged in the ownership and operation of real property investments. On December 17, 1969, petitioner Samson Construction Company, filed an action against Rubicon in the Superior Court of California, County of Alameda. On July 2, 1970, Rubicon filed a petition for an arrangement pursuant to the provisions of Chapter XII of the Bankruptcy Act. The Referee then appointed the respondent as trustee and gave to him authority to manage the real estate properties of the debtor including collection of the rents. The trustee was further directed that after payment of current operating costs, he was to make such payments as receipts permitted on various secured obligations against the real properties owned by the debtor.

At a hearing before the Referee on November 24, 1970, the debtor conceded that he was unable to secure financing which would be necessary to any effective plan of arrangement. Upon discussion as to whether the debtor should be adjudicated a bankrupt or the proceedings dismissed (option of the court under Section 481 of the Act), it was determined that the arrangement proceedings should be dismissed.

The Referee then ordered that the effective date of the dismissal would be December 1, 1970, and that the trustee's duties would cease as of November 30, 1970. The trustee was ordered to file his final account and the court expressly retained "jurisdiction until that account has been filed and has been heard before a District Judge."

The trustee's application for compensation was filed on November 24, 1970, and his final account was filed on De-

cember 31, 1970. On January 18, 1971, the Referee sent a notice to the creditors of the dismissal and of the hearing on the application for compensation which was set before this Judge on March 12, 1971.

On March 1, 1971, Samson Construction Company obtained a writ of attachment from the Superior Court of Alameda County. On March 3, 1971, Samson Construction Company served on the trustee a "Notice of Garnishment" pursuant to said writ of attachment seeking to garnish "all personal property, money and credits in your possession or under your control belonging to The Rubicon, Ltd."

An additional writ of attachment pertaining to the same state court proceeding was obtained on March 8, 1971, and pursuant to that writ another and similar "Notice of Garnishment" was served on the trustee as he was leaving the courtroom of this Judge.

Samson Construction Company has not made any formal application to this court or to the Referee pertaining to its request that the Referee honor the state court garnishment. However, on April 2, 1971, an oral motion was made before the Referee requesting that the attachment be honored. Said request was denied and the Referee ordered that the balance of the funds on hand (after deducting approved compensation of trustee and other administrative costs) was to be paid to Sun Life Insurance Company, the holder of the first deed of trust on Rubicon I. Samson Construction Company petitioned this court for review of said order.

The main issue presented here on review is whether funds in the possession of a trustee pursuant to a Chapter XII arrangement proceeding are subject to garnishment under a writ of attachment which has been issued from a state court subsequent to the time that the arrangement proceedings have been dismissed. For the reasons set forth below, this court finds that the funds in the posses-sion of the trustee are not garnishable on process from the state courts.

In In Re Argonaut Shoe Co., 187 F. 784 (9th Cir. 1911), the issue before the court was quite similar to the issue in the case at bar. In *Argonaut* the claimant proved her claim against the bankrupt estate and subsequently a dividend was declared, whereby the proportion due the claimant was determined to be $1,192.20. After the dividend had been declared respondents sued the claimant in the state court and caused a writ of garnishment to be served on the trustee in bankruptcy. The question before the court was "whether funds in the hands of a trustee in bankruptcy for the benefit of a creditor of the bankrupt's estate may be reached by garnishment proceedings after a dividend has been declared."

In holding that dividends in the hands of the trustee are not to be attached by process from a state court, the court cited the following quotation from Gilbert v. Quimby, 1 F. 111 (S.D.N.Y.1880):

"That the dividend attachable was not on process from the state courts would seem to be quite clear. While in the hands of the assignee, it would be a part of the estate of the bankrupt in the custody of the court. It would not be held the property of the debtor, but would only be property that would become his when he should get it. He could not maintain any suit against the assignee for it, nor obtain it by any legal process other than by application to the District Court having control of the fund as a party to the proceedings in that court. Money in the hands of a disbursing officer of the United States, due to a private person, cannot be attached on process against such person out of a state court, because the money will not be his, but will remain the property of the United States until it is paid to him."

Directly following the above the court further stated:

"The reason of this doctrine seems to be that the court having the money or

property in its custody under the law holds it for some purpose, of which that court is exclusive judge. To permit property or money thus held to be seized on execution, attached, or garnisheed, would therefore defeat the very purpose for which it is held, and in many cases enable some other court to dispose of property or money, and wholly divert it from the end or purpose for which possession has been taken. A conflict of jurisdiction and decision would in many cases thus ensue."

It is clear then that funds in the hands of the trustee pursuant to bankruptcy proceedings are *in custodia legis* and that the bankruptcy court does not lose custody of such funds by the mere declaration of a dividend. As such, these funds are not attachable by process from a state court, at least without the consent of the bankruptcy court. See: In Re Berman & Co., 378 F.2d 252 (6th Cir. 1967); In Re Chakos, 36 F.2d 776 (1930); Collier on Bankruptcy, Vol. 3A, § 65.08.

Petitioner, however, contends that *In re Argonaut* is distinguishable from the instant case for various reasons. First, it is submitted that the money sought to be attached in the present case is not a dividend or a cost of administration, but rather assets which clearly belong to the debtor.

It seems to this court that the determinative factor in the applicability of *Argonaut* is not whether the funds held by the trustee are declared dividends, but rather if the funds are still in the custody of the court. In *Argonaut* the respondents argued that pursuant to California law, once a dividend was declared by the court, the court immediately lost jurisdiction over the fund and that the amount of the dividend vested in the parties who became legally entitled thereto, i. e. the funds were no longer *in custodia legis*.

In rejecting this contention of respondents, the court stated that the rule of a state court "cannot affect the administration by a federal court of an estate in bankruptcy. * * * The right to garnishee funds *in custodia legis* must depend upon express statutory authority. No such authority is to be found in the bankruptcy law."

In attempting to further distinguish *Argonaut,* petitioner argues that in the present case, the arrangement proceedings were dismissed and that upon dismissal the funds were no longer in the custody of the court, but were "clearly the assets of the debtor."

At the outset it should be noted that although the Referee did set December 1, 1970, as the effective date for the dismissal of the proceedings, he also expressly retained jurisdiction until such time as the trustee had filed his final account and any matters regarding compensation had been heard before a district judge. However, even had the Referee not expressly retained jurisdiction when he dismissed the proceedings, the bankruptcy court's jurisdiction over the funds would not have been destroyed until the funds were disbursed pursuant to the order of the Referee. The trustee was authorized to collect rents during the pendency of the Chapter XII proceedings and jurisdiction over these funds remains with the bankruptcy court until they are disbursed. See In re De Tamble, 88 F.2d 893 (7th Cir. 1937).

In light of the fact that the funds remained in the custody of the bankruptcy court until distributed by the trustee and the fact that the Referee has ordered the balance of the funds (after deduction of the trustee's compensation and other administrative costs) to be paid to Sun Life Insurance Company, it can hardly be said that the funds became the asset of the debtor after dismissal of the Chapter XII proceedings.

For the above stated reasons, it is the finding of this court that the funds in the possession of the trustee are funds *in custodia legis* and as such as not garnishable by process of the Superior Court of Alameda County. Accordingly,

it is the order of this court that the Referee's order of April 2, 1971, be, and it hereby is, affirmed and that the purported garnishment of Samson Construction Company is void and shall have no effect.